UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LANCE R. MARTIN,

Plaintiff,

v.

R. PATEL, et al.,

Defendants.

Case No.: 17-CV-916 JLS (WVG)

**ORDER: (1) GRANTING MOTIONS TO DISMISS; (2) DISMISSING COMPLAINT; (3) DENYING MOTION FOR SANCTIONS; (4) DENYING MOTION FOR DEFAULT JUDGMENT; AND (5) DENYING AS MOOT MOTION TO STRIKE**

(ECF Nos. 16, 17, 24, 27, 37, 40, 43, 44, 49)

Presently before the Court are a variety of motions, which the Court addresses individually below. The Court vacated all hearings on the motions and took them under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF Nos. 38, 48, 53.) Having considered the parties' arguments and the law, the Court rules as follows.

## BACKGROUND

On May 5, 2017, Plaintiff filed a Complaint alleging violations of his civil rights under 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff seeks to hold several Defendants liable for their alleged deficient medical care of Plaintiff. (*See id.*) Specifically, Plaintiff claims that

Defendants, who are medical professionals at the "Neighborhood Clinic-El Cajon," failed to properly treat him for two medical injuries: first, an alleged cervical injury causing extreme pain and suffering and partial paralysis; second, an internal injury causing constant and bloody urine and abdominal pain. (*Id.* at 7.)[1] For these alleged wrongs Plaintiff seeks "declaratory judgment [that] defendants committed medical malpractice on Plaintiff" and damages (including punitive damages) totaling $2 million. (*Id.* at 4.)

Plaintiff failed to pre-pay the filing fee and moved to proceed *in forma pauperis* ("IFP"). (ECF No. 2.) The Court granted his motion, but dismissed Plaintiff's Complaint under the mandatory screening required for all IFP motions under 28 U.S.C. § 1915(e)(2). (ECF No. 7.) The Court dismissed Plaintiff's Complaint for two reasons. First, Plaintiff could not bring a § 1983 claim against Defendants because Plaintiff did not show Defendants acted under color of state law. (*Id.* at 4.) Second, without a viable § 1983 claim against Defendants, Plaintiff did not show why this Court would have subject matter jurisdiction over what appeared to be state law medical malpractice claims. (*Id.*)

Plaintiff filed a First Amended Complaint, which sought to cure the defects identified by the Court. (ECF No. 11.) The Court again dismissed Plaintiff's First Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) because Plaintiff did not show how Defendants acted under color of state law. (ECF No. 12, at 3.) Plaintiff filed a Second Amended Complaint, which again sought to cure the deficiencies identified by the Court. (Second Am. Compl. ("SAC"), ECF No. 13.) Specifically, Plaintiff alleged that Defendants acted under color of state law because they have "a California state billing contract funded through Med Cal to . . . El Cajon neighborhood Health Clinic." (*Id.* ¶¶ 5–8.) The Court found those accusations sufficient to survive the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b). (ECF No. 19, at 4.) The resulting deluge of motions soon followed.

After Plaintiff filed his SAC, but prior to the Court allowing Plaintiff's SAC to

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

proceed beyond the IFP screening, the Clerk of Court's office issued summons to Plaintiffs on November 16, 2017, (ECF No. 14). That summons was issued prematurely; the Court had not granted Plaintiff the right to use the United States Marshal to effect service of process. Subsequently, the Court authorized the United States Marshal to effect service on January 4, 2018 and an amended summons was issued the same day, (ECF No. 21). The resulting confusion, through no fault of the parties, has created issues in service, which the Court will address below with regard to Plaintiff's Motion for Default Judgment as well as those Defendants who raised service-related issues.

## MOTIONS TO DISMISS

### I.    Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Several Defendants filed Motions to Dismiss based on lack of subject matter jurisdiction. Because subject matter jurisdiction is a threshold issue, the Court addresses these arguments first. These Motions include Defendant United States of America's[2] Motion to Dismiss, ("United States MTD," ECF No. 40), and Defendant Vafadaran's Motion to Dismiss, ("Vafadaran MTD," ECF No. 49). Plaintiff filed a Request for Judicial Notice, ("RJN," ECF No. 47), in which he opposes the United States' substitution in the place of Defendant Patel. Plaintiff also filed a Response in Opposition, (ECF No. 55), to Defendant Vafadararn's Motion to Dismiss.

#### A. *Legal Standard*

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff bears the burden of establishing he has standing to bring the claims

---

[2] Defendant United States substituted itself for Defendant Dr. R. Patel, pursuant to 42 U.S.C. § 233, for purposes of tort liability only. (ECF No. 39.)

asserted. *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) ("The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction.").

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Conversely, when resolving a facial attack, a court assumes the truth of the plaintiff's factual allegations, and draw all reasonable inferences in favor of the plaintiff. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

### B. Analysis

#### 1. Substitution of the United States for Defendant Patel

As a threshold issue, the Court first addresses whether the United States properly substituted itself for Defendant Patel. Plaintiff named Defendant Patel in his SAC. (SAC ¶ 5.) The United States substituted itself for Defendant Patel pursuant to 42 U.S.C. § 233(g)–(n). (ECF No. 39.) Plaintiff filed a Request for Judicial Notice in which he argues that the United States was improperly substituted for Defendant Patel. Specifically, Plaintiff contends that the U.S. Attorney and Defendant Patel have improperly applied the law because 28 U.S.C. §§ 2401(b), 2671, and 1346(b) confer jurisdiction when a federal department or agency is a defendant, but does not apply to a contractor with the United States. (RJN 1.) Plaintiff argues that Defendant Patel admitted that he was a contractor with the Public Health Service and Neighborhood Health Center and Defendant Patel's

status as a federal contractor precludes substitution of the United States as defendant. (*See id.*)

The Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233, extends tort protections for medical malpractice to certain entities and their employees, officers, and certain contractors. § 233(a). Section 233(b) mandates the United States Attorney General defend any civil action against a Public Health Service employee. If an entity is deemed to be a Federally Qualified Health Clinic ("FQHC") "and certified to be acting within the scope of their employment, the organization receives the same coverage under the [Federal Tort Claims Act] as commissioned officers and employees of the Public Health Service." *Pediatric & Family Med. Found. dba Eisner Pediatric & Family Med. Ctr. v. United States Dep't of Health & Human Servs.*, No. CV1700732SJOASX, 2017 WL 8220596, at *5 (C.D. Cal. July 6, 2017) (citing 42 U.S.C § 233(c), (g); 28 U.S.C. §§ 1346, 2671 *et. seq.*) Thus, when an entity qualifies under § 233 and is sued for medical malpractice, the United States is substituted in as defendant on behalf of the entity. § 233(c).

Section 233(g) defines the application process for a person to qualify as an employee of the Public Health Service. An entity must submit an application to the Secretary of Health and Human Services verifying that it satisfies the requirements of the statute. § 233(g)(1)(D), (h). An entity includes "a public or non-profit private entity receiving Federal funds" under 42 U.S.C. § 254(b). 42 U.S.C. § 233(g)(4). As relevant here, the definition of employee includes "an entity described in [§ 233(g)(4)] and any officer, governing board member, employee, or *contractor* (subject to paragraph (5)) of such an entity." § 233(g)(1)(A) (emphasis added). Section 233(g)(5) prescribes the hour limits for contractors employed by entities defined in paragraph 4.

Defendant United States filed a "Certificate of Scope of Employment" certifying that Defendant Patel was an employee or qualified contract of the Public Health Service. (ECF No. 39-1.) Under the statutory framework described in the Federally Support Health Centers Assistance Act, the United States was authorized to determine that Defendant Patel

acted within the scope of his employment and, therefore, qualify as a Public Health Employee. This is true even if Defendant Patel is a contractor. *See* § 233(g)(1)(A). The United States determined that Defendant Patel was an employee of the Public Health Service from January 1, 2016 to December 31, 2016. (ECF No. 39-1, at 1.)

Once a person is deemed to be an employee of the Government, then the Westfall Act mandates the Attorney General to defend any civil action brought against the employee, 28 U.S.C. § 2679(c), and "[u]pon certification by the Attorney General . . . any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States, § 2679(d)(1). A party challenging "the Attorney General's decision to grant scope of employment certification, 'bears the burden of presenting evidence and disproving [that] decision . . . by a preponderance of the evidence.'" *Jackson v. Tate*, 648 F.3d 729, 735 (9th Cir. 2011) (alterations in original) (quoting *Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006)).

Here, Plaintiff's only argument against substitution is that Defendant Patel was a contractor and not an employee with the Public Health Service and Neighborhood Health Center. (ECF No. 47, at 1.) As discussed, the Attorney General may certify contractors as Public Health Employees under 42 U.S.C. § 233(g). Plaintiff has the burden of proof, *Jackson*, 648 F.3d at 735, and his RJN puts forward no other reasons to doubt the United States' ability to substitute for Defendant Patel. The Court finds that Defendant Patel was properly substituted with Defendant United States.[3] Accordingly, the Westfall Act required the United States to substitute itself for Defendant Patel, which it did, (*see* ECF No. 39). The Court turns to the jurisdictional question.

/ / /

/ / /

_____

[3] Plaintiff's Request for Judicial Notice includes a letter he received from the United States Attorney. The letter contains copies of an email sent to this Court by Defendant United States as well as the documents filed by Defendant United States at ECF No. 39, 39-1, 39-2. Because these documents are already in the record, the Court need not judicially notice those same documents. Accordingly, the Court **DENIES AS MOOT** Plaintiff's Request for Judicial Notice, (ECF No. 47).

### 2. Subject Matter Jurisdiction

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). A court seeking to exercise jurisdiction over any suit against the government must have "a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." *Id.* (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003); and citing *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923–24 (9th Cir. 2009)) Plaintiff brings a cause of action under 42 U.S.C. § 1983; however, § 1983 imposes liability on a "person" and the United States is not a "person" subject to § 1983 liability. *See id.* at 908; *see also District of Columbia v. Carter*, 409 U.S. 418, 425 (1973) ("The statute deals only with those deprivations of rights that are accomplished under the color of the law of 'any State or Territory.' It does not reach purely private conduct and, with the exception of the Territories, actions of the Federal Government and its officers are at least facially exempt from its proscriptions." (footnotes omitted)).

Defendant United States brings a factual attack on Plaintiff's claim. (ECF No. 40-1.) Defendant argues that Plaintiff is required under the Federal Tort Claims Act ("FTCA") to present an administrative claim to the agency whose alleged conduct caused the injury and Plaintiff has not done so. (*Id.* at 4.) Moreover, Defendant submitted a declaration demonstrating that Plaintiff did not submit his claim to the Department of Health and Human Services ("HHS"), the agency responsible for his claim. (*Id.*; *see* Declaration of Meredith Torres, ECF No. 40-2, ¶¶ 4–6).) Accordingly, Defendant United States argues that Plaintiff's complaint must be dismissed with prejudice because an administrative claim was not presented and a jurisdictional defect cannot be cured until Plaintiff meets the FTCA's requirements and files a new suit. (ECF No. 40-1, at 4.)

28 U.S.C. § 2675(a) requires a claimant to present his claim to the appropriate Federal agency before bringing an action against the United States in court. Filing an

administrative claim is a jurisdictional requirement and must be "strictly adhered to." *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (citing *Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995)). "A tort claimant may not commence proceedings in court against the United States without first filing her claim with an appropriate federal agency and either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made." *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992).

The Court agrees with Defendant United States. Because Defendant presents a factual attack on Plaintiff's claim, the Court may consider evidence in determining its jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. Defendant submitted a declaration verifying that Plaintiff has not submitted an administrative claim with HHS. (*See* ECF No. 40-2.) Moreover, in his SAC, Plaintiff states "The Agency does not have an administrative process." (SAC 4.) It is not clear which Agency Plaintiff refers to, but HHS provides a claims process for FTCA claims against FQHCs. *See* Health Resources & Services Administration, *About the Federal Tort Claims Act (FTCA)*, https://bphc.hrsa.gov/ftca/about/index.html (last visited Apr. 18, 2018). This Court has no jurisdiction over Plaintiff's claim against Defendant United States until he exhausts his administrative remedies. Further, the declaration makes clear that Plaintiff cannot amend his complaint to allege he has met the administrative claim requirement. Accordingly, the Court **GRANTS** Defendant United States' Motion to Dismiss, (ECF No. 40), and **DISMISSES WITH PREJUDICE** Defendant The United States of America.

Defendant Vafadaran also attacks Plaintiff's SAC as jurisdictionally deficient. (Vafadaran MTD 4.) Like Defendant United States, Defendant Vafadaran argues that the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233, requires Plaintiff to submit an administrative claim to HHS. (*Id.*) Generally, this is true if the United States is defending an employee certified as a Public Health Employee. The Court applied section 233 to Defendant Patel and determined the United States properly substituted for Defendant Patel. However, the United States has made no such substitution for Defendant

Vafadaran. Section 233(g)(1)(D) requires an entity to submit an application on behalf of its employees and contractors. Section 233(h) requires the HHS Secretary to determine whether the entity is qualified and Section 233(c) requires the Attorney General to certify that the employee was acting within the scope of his employment at the time of the incident. Defendant Vafadaran has made no such showing and the United States has not substituted itself or verified Defendant Vafadaran was acting within the scope of his employment. Accordingly, the Court **DENIES IN PART** Defendant Vafadaran's Motion to Dismiss. The Court discusses Defendant Vafadaran's 12(b)(6) Motion below.

Plaintiff filed an Opposition brief against Defendant Vafadaran's Rule 12(b)(1) motion to dismiss. (ECF No. 55.) Because the Court denies in part Defendant Vafadaran's Motion, it does not address Plaintiff's arguments as to exhaustion of administrative remedies. (*See id.* at 2.)

## II. Rules 12(b)(4) & 12(b)(5): Insufficient Process and Insufficient Service of Process

Laboratory Corporation ("LabCorp") filed a Motion to Dismiss for insufficient service and insufficient service of process. ("LabCorp MTD," ECF No. 17.) Plaintiff filed a Response in Opposition to, (ECF No. 26), and Labcorp filed a Reply in Support of, (ECF No. 35), Labcorp's Motion. Additionally, LabCorp filed a Motion to Strike "Laboratory Corporation of America" from the Amended Summons, (ECF No. 27).

### A. Legal Standard

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4." *Crowley v. Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013) (internal citations and quotation marks omitted). Federal Rule of Civil Procedure 12(b)(4) permits defendants to move for dismissal due to insufficient process and Rule 12(b)(5) authorizes a defendant to move for dismissal due to insufficient service of process. The two rules serve distinct purposes, though they are sometimes confused:

An objection under Rule 12(b)(4) concerns the form of the

9

process rather than the manner or method of its service. Technically, therefore, a [R]ule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint.

*El-Aheidab v. Citibank (S. Dakota), N.A.*, No. C-11-5359 EMC, 2012 WL 506473, at *2 (N.D. Cal. Feb. 15, 2012) (alteration in original) (citing 5A Wright & Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2011)).

When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service as governed by Rule 4. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). When a court determines that service of process is insufficient, it has broad discretion to either dismiss the action without prejudice, or retain the case but quash the service of process. *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001); *see also* 4B Wright & Miller, *Federal Practice and Procedure* § 1137 (4th ed. 2017). A court should generally quash service of process instead of dismissing the action when there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly. *Buzztime Entm't, Inc., v. Sony Computer Entm't Eur. Ltd*, No. 08-CV-0122 W (LSP), 2008 WL 11337017, at *1 (S.D. Cal. July 10, 2008) (citing 5B Wright & Miller, § 1354.348; and *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976); and *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985)).

## B. Analysis

Plaintiff's SAC names Defendant Yang and alleges that he was employed by Medical, Community Health Group and also at LabCorp. (SAC ¶ 7.) Plaintiff attempted to serve Dr. Yang by sending the summons to LabCorp's business address. (LabCorp MTD 2 (citing Declaration of Kirsten Patalano ("Patalano Decl."), ECF No. 17-2, ¶ 3).) In its Motion to Dismiss, LabCorp stated it was unsure whether Plaintiff intended to serve Dr. Yang or LabCorp. (*Id.* at 3.) LabCorp also declared that Dr. Yang was not employed by LabCorp. (*Id.* at 4 (citing Patalano Decl. ¶ 4).)

Plaintiff filed an Opposition clarifying that only Dr. Yang—not LabCorp—is a named Defendant. (ECF No. 26, at 2.) Plaintiff contends that LabCorp's declaration is false because he has evidence that Dr. Yang was a "Director of LabCorp." (*Id.* at 3.) LabCorp filed a Reply stating that Dr. Yang was an independent contractor; not an employee of LabCorp. (ECF No. 35, at 3 (citing Patalano Decl. ¶ 3).) LabCorp disclosed this information when it filed its Motion to Dismiss and has not attempted to deceive the Court or Plaintiff. Furthermore, LabCorp has even provided Plaintiff an address so that he may properly serve Dr. Yang. (*Id.* at 3.)

Plaintiff's SAC only named Dr. Yang as a Defendant, not LabCorp. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . ."). The Court finds LabCorp is not a party to these proceedings. Moreover, even if LabCorp was a party to these proceedings, Plaintiff's attempted service as to Defendant Yang was improper because Federal Rule of Civil Procedure 4(c)(2) prohibits a party from serving a summons and complaint—service must be affected by any person who is not a party. Plaintiff violated Rule 4(c)(2) by mailing his summons and SAC to LabCorp. (*See* ECF No. 43, at 2 ("Specifically, on November 24, 2017[,] Plaintiff served these defendants a copy of the Summons, and second amended Complaint to the defendants by the United States mail System.").)

In sum, two facts are clear: LabCorp is not a party to these proceedings and Plaintiff has not served Dr. Yang. LabCorp moves the Court to strike the amended summons issued against LabCorp. (ECF No. 27-1.) The Court has broad discretion to quash service of process or dismiss the action without prejudice. *See Sheehan*, 253 F.3d at 513. However, the Court finds the following course of action to be an equitable solution to the present issue. As explained below, Plaintiff's SAC will be dismissed without prejudice and Plaintiff will be permitted to amend his complaint, *see infra* Conclusion. Because the Court dismisses the SAC without prejudice and allows Plaintiff leave to amend, the Court will extend the time for Plaintiff to serve Dr. Yang, in accordance with the Federal Rules of Civil Procedure. Accordingly, the Court **GRANTS** LabCorp's Motion to Dismiss, (ECF

No. 17) and **DENIES AS MOOT** LabCorp's Motion to Strike, (ECF No. 27). LabCorp is not a party to these proceedings.

### III. Rule 12(b)(6): Failure to State a Claim

Defendants Andrew Malcolm and Gordon Zink-Brody filed a Motion to Dismiss, ("Malcolm MTD," ECF No. 16), as did Defendant Jerry Cunningham, ("Cunningham MTD," ECF No. 44). Additionally, Defendant Vafadaran's Motion requests dismissal pursuant to Rule 12(b)(6). (*See* Vafadaran MTD 5.) Plaintiff filed a Motion to Quash, (ECF No. 24), which the Court construes as an Opposition to Defendants Malcom and Zink-Brody's Motion. Defendants Malcolm and Zink-Brody filed an Opposition to, (ECF No. 31), Plaintiff's Motion to Quash, which the Court construes as a Reply.[4] Finally, Plaintiff filed an Opposition to, (ECF No. 52), Defendant Cunningham's Motion to Dismiss, and an Opposition to, (ECF No. 55), Defendant Vafadaran's Motion to Dismiss.[5] No Defendant filed a reply.

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the

---

[4] Plaintiff's Motion presents several arguments as to why Defendants Malcolm and Brody's Motion to Dismiss is improper. The Court agrees with Defendants that there is no "motion to quash" in the Federal Rules of Civil Procedure; however, the Court will construe Plaintiff's arguments as an Opposition brief and will consider Defendants' filing a Reply brief.

[5] Plaintiff's Oppositions also purport to assert a counterclaim pursuant to Federal Rule of Civil Procedure 13. (ECF No. 52, at 2; ECF No. 55, at 2.) However, it appears that Plaintiff does not assert a counterclaim but instead argues, for example, that Defendant Cunningham's arguments in his Motion to Dismiss are not sufficient and Defendant made false allegations in the Motion. (ECF No. 52, at 2–3.) The Court construes Plaintiff's filings as opposition briefs. Additionally, it appears that Plaintiff assigned himself hearing date and times for his purported motions. (ECF No. 52, at 1; ECF No. 55, at 1.) As discussed, Plaintiff's filings are not motions but rather oppositions to various Defendants' motions. However, in the future Plaintiff must heed Civil Local Rule 7.1.b, which requires all hearing dates for any matter on which a ruling is required to obtain a hearing date from the clerk of the judge to whom the case is assigned.

pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Particularly in civil rights cases, courts have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (citing *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984)). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In the Ninth Circuit, a court should grant a *pro se* litigant leave to amend his complaint "'unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Before a complaint is dismissed, a court must give the *pro se* plaintiff some notice of the complaint's deficiencies. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citing *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez*, 203 F.3d at 1126–30). However, when amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000) (citing *Noll*, 809 F.2d at 1448).

### B. Analysis

Plaintiff filed a Second Amended Complaint under the Civil Rights Act, 42 U.S.C. § 1983, seeking to hold several Defendants liable for their alleged deficient medical care of Plaintiff. (*See generally* SAC.) Specifically, Plaintiff claims that these Defendants failed to properly treat him for two medical injuries: first, an alleged cervical injury causing extreme pain and suffering and partial paralysis; second, an internal injury causing constant and bloody urine and abdominal pain. (*Id.* ¶ 10.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law when she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed in the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, then the defendant is considered to be acting under color of state law. *West*, 487 U.S. at 49.

Here, Plaintiff alleges Defendants acted under color of state law because they each have "a California state billing contract funded through Medi Cal to . . . El Cajon neighborhood Health Clinic." (SAC ¶¶ 5–8.) Plaintiff survived the IFP screening stage because he alleged Defendants received state Medi-Cal funds, which could create state action. (ECF No. 19, at 4.) To an extent, Plaintiff was correct; there was some government involvement. As previously discussed, the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233, permits the United States to defend an employee or contractor of certain entities receiving federal funds. The United States substituted itself for Defendant Patel. At this time, the United States has not substituted for any other Defendant and no other Defendant was designated a Public Health Service employee.[6]

The outstanding issue is this: whether California's Medi-Cal arrangement with the remaining Defendants created a situation where Defendants were operating under state law. The remaining Defendants appear to be private doctors employed at the El Cajon Neighborhood Health Clinic. (SAC ¶¶ 5–8.) In limited circumstances private actors may be operating under color of state law.

The Court follows a two-part test to determine if a private party is acting under color of state law. "First, the deprivation must be caused by the exercise of some right or

---

[6] Even if the United States were to substitute itself for all remaining Defendants, the Court's analysis would not change because it is clear from the government's declaration that Plaintiff has not submitted any administrative claims to HHS as to any Defendant. (ECF No. 40-2, ¶¶ 4–5.)

privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* At the outset, the Court presumes that conduct by private actors is not state action, *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011), and Plaintiff has the burden of establishing Defendants were state actors, *id.* (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)).

Plaintiff argues that there is state action present by virtue of the funding relationship between Defendant Cunningham and the State of California. (ECF No. 52, at 3.) Plaintiff makes the same argument against Defendants Malcolm and Zink-Brody. (ECF No. 24, at 2.)

Plaintiff cannot meet either element of the *Lugar* test. First, Plaintiff's alleged deprivation of his constitutional rights is not the result of some governmental policy or rule. Plaintiff's alleged harms came from medical choices made by private doctors. There is no allegation in his Second Amended Complaint that the State of California imposed a policy or rule that prescribed how Defendants were to treat Plaintiff. For example, in *Blum v. Yaretsky*, 457 U.S. 991, 993 (1982), Medicaid patients brought an action against their nursing homes alleging that the State of New York should be held responsible for the nursing homes' decision to transfer patients without notice or an opportunity for hearing. The question presented was whether the State could be held responsible for the private nursing homes' decisions under the Fourteenth Amendment. *Id.* The Second Circuit had reasoned that the necessary state action existed because the nursing home transferred and discharged patients and New York's Medicaid system responded by adjusting the patient's benefits. *See id.* at 1005. The Supreme Court distinguished between the decision of the nursing home to discharge or transfer patients and the State's obligation to adjust the patients' benefits. Thus, the Court went on to reason:

> That the State responds to such actions by adjusting benefits does not render it *responsible* for those actions. The decisions about

> which respondents complain are made by physicians and nursing home administrators, all of whom are concededly private parties. There is no suggestion that those decisions were influenced in any degree by the State's obligation to adjust benefits in conformity with changes in the cost of medically necessary care.

*Id.* The Court also found that the State's Medicaid regulations did not dictate an affirmative command on the nursing homes. The Court held that the regulations

> do not require the nursing homes to rely on the forms in making discharge or transfer decisions, nor do they demonstrate that the State is responsible for the decision to discharge or transfer particular patients. Those decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State.

*Id.* at 1008 (footnote omitted).

The same reasoning governs here. Plaintiff alleges that Defendants made medical decisions that led to harm to him and amounted to medical malpractice. (*See* SAC ¶¶ 9–13.) Defendants' actions are medical judgments. For example, Plaintiff alleges that Defendant Malcolm took an x-ray of Plaintiff, conspired with Defendant Patel to falsify the x-ray, (s*ee id.* ¶ 17), and Defendant Patel then denied him pain medication, (*id.* ¶ 14–15). Defendant Cunningham allegedly lied to Plaintiff about his urinalysis test results and released Plaintiff from the emergency ward without antibiotics or medical treatment. (*Id.* ¶ 20.) Plaintiff's factual allegations do not demonstrate how or why the State of California—through its Medi-Cal reimbursement—dictated how Defendants treated Plaintiff as a patient.

Second, Defendants cannot fairly be considered state actors. "In order for private conduct to constitute governmental action, 'something more' must be present." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)

(quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Due to the fact-intensive nature of the inquiry, courts have developed a variety of tests to determine whether a private party has acted under color of state law. *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002). The Supreme Court has identified at least applicable seven tests, *see Brentwood Acad.*, 531 U.S. at 296, and the Ninth Circuit has held that "[s]atisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Medi-Cal is California's version of the joint federal-state program known as Medicaid. *Marquez v. Dep't of Health Care Servs.*, 240 Cal. App. 4th 87, 93 (Ct. App. 2015). "Medi-Cal is intended to provide, to the extent practicable, medically necessary care to California residents 'who lack sufficient annual income to meet the costs of health care, and whose other assets are so limited that their application toward the costs of such care would jeopardize the person or family's future minimum self-maintenance and security.'" *Id.* at 94 (quoting Cal. Welf. & Inst. Code § 14000). "The Medi-Cal program does not directly provide services; instead, it reimburses participating health care plans and providers for covered services provided to Medi-Cal beneficiaries." *Id.* (citing *Cowan v. Myers*, 187 Cal. App. 3d 968, 990 (1986)). States are also required to reimburse FQHC. 42 U.S.C. §§ 1396d(a)(2)(B)–(C), 1396a(bb)(1); *see Cal. Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1014–17 (9th Cir. 2014) (discussing statutory scheme for reimbursing FQHC).

Here, the Court accepts as true Plaintiff's allegation that Defendants had a "California State billing contract funded through Medi Cal." (SAC ¶¶ 5–8.) *Marquez* and California Welfare and Institutions Code § 14000 reveal that Medi-Cal reimburses Defendants for medical treatment. Defendants Zink-Brody and Malcolm argue that a willingness to accept Medi-Cal is not a contract to provide services to Plaintiff. (Malcolm MTD 6.) The Court agrees; Defendants were not under any affirmative obligation to provide services—they received reimbursement for medical care.

Plaintiff's cited cases are distinguishable. For example, *West v. Atkins*, 487 U.S. at 43–44, involved a state prisoner who received treatment from a private doctor contracted by the prison to provide orthopedic services to inmates. The Supreme Court determined that the private physician was a state actor. The Court reasoned "[t]he State bore an affirmative obligation to provide adequate medical care to [the plaintiff]; the State delegated that function to [the defendant doctor]; and [the defendant] voluntarily assumed that obligation by contract." *Id.* at 56. Here, the State of California's duty is to reimburse doctors who provide medical care to indigent patients. The State does not impose an affirmative obligation, unlike the doctor in *West*, to provide Plaintiff medical care.

Plaintiff also cites *Lopez v. Department of Health Services*, 939 F.2d 881, 882 (9th Cir. 1991) (per curiam), where a *pro se* plaintiff alleged that the State of Arizona contracted with two defendants to provide medical services to indigent citizens. In *Lopez*, the district court had *sua sponte* screened the plaintiff's complaint, pursuant to 28 U.S.C. § 1915(d), but the Ninth Circuit reversed because the complaint alleged a connection between the defendants and the contract requiring them to provide services. *See id.* Medi-Cal is fundamentally different from the contract in *Lopez*. Medi-Cal is passive, it reimburses doctors for billing procedures and does not mandate doctors to make a medical decision one way or the other. *See Marquez*, 240 Cal. App. 4th at 93–94. By comparison, the *Lopez* defendants were alleged to be under an affirmative contractual duty to provide medical services to indigent citizens.

Finally, practical considerations weigh against Plaintiff's argument. A wide breadth and number of doctors and hospitals accept Medicaid and Medi-Cal funding. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 627–29 (2012) (Ginsburg, J., concurring in part, concurring in the judgment in part, and dissenting in part) (discussing Medicaid framework). If this or any Court were to find that private physicians were state actors simply because they are reimbursed for treating indigent patients, then every patient alleging a medical malpractice claim would have a claim under 42 U.S.C. § 1983. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982) (holding that "[a]cts of such private

17-CV-916 JLS (WVG)

contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts"); *Quinones v. UnitedHealth Grp., Inc.*, No. 14-497 LEK-RLP, 2015 WL 4523499, at *5 (D. Haw. July 24, 2015) ("If contracting, funding, and regulating was sufficient to create state action, nearly every government contract would produce the possibility of § 1983 liability against the government contractor.").

The Court briefly addresses Plaintiff's argument in his Motion to Quash where he states "Plaintiff[']s second amended Complaint was screened by this honorable court, and then ruled Plaintiff[']s Complaint stated a claim against Defendants, the Court then ordered Defendants to file an answer to it." (ECF No. 24, at 3.) This statement is not accurate. The Court's prior order only found "that Plaintiff's allegations were sufficient to survive the *sua sponte* screening required by section 1915(e)(2) and 1915A(b)." (ECF No. 19, at 4.) The *sua sponte* screening is not the same as a Rule 12(b)(6) motion brought by Defendants. *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."). Moreover, the Court did not order Defendants to "answer"; the Court ordered Defendants to "*reply to Plaintiff's Second Amended Complaint.*" (ECF No. 19, at 5 (emphasis added).) Thus, Defendants could have answered *or* filed a responsive pleading pursuant to Rule 12.

The Court finds that Plaintiff has not demonstrated that Defendants Vafadaran, Zink-Brody, Malcolm, and Cunningham acted under color of state law. Accordingly, Plaintiff's claim under 42 U.S.C. § 1983 must fail. The Court **GRANTS** Defendants Vafadaran, Zink-Brody, Malcolm, and Cunningham's respective Motions to Dismiss, (ECF Nos. 16, 44, 49), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Second Amended Complaint.

## MOTION FOR SANCTIONS

Plaintiff moves for Federal Rule of Civil Procedure 11 sanctions against Snell and Wilmer LLP. (ECF No. 37.) According to Plaintiff, counsel for LabCorp filed a Motion

to Strike, (ECF No. 27), and attached to the motion a copy of Plaintiff's Opposition but failed to attach one of Plaintiff's exhibits to LabCorp's motion. (ECF No. 37, at 1.) Specifically, Plaintiff's Opposition included a laboratory report that purports to show that Dr. Yang's name was on the report. (*Id.*) Plaintiff argues that LabCorp's counsel altered his pleading and violated California Penal Code § 135 by "destroying or concealing evidence" that Plaintiff attached to his Opposition.

LabCorp filed an Opposition, (ECF No. 41), to Plaintiff's Motion arguing that Plaintiff's Motion fails because Plaintiff did not provide the requisite 21-day "safe harbor" notice mandated by Rule 11. LabCorp also argues that it did not conceal or destroy Plaintiff's evidence and Plaintiff's document remains on file with the Court. (*Id.* at 2.)

The Court agrees with LabCorp. A motion for sanctions must be served under Rule 5, but cannot be filed with the Court until the challenged paper is withdrawn or appropriately corrected within 21 days after service. Fed. R. Civ. P. 11(c)(2). Thus, Plaintiff was required to give LabCorp an opportunity to cure the supposed defective document. Moreover, LabCorp's conduct is not subject to sanction. Plaintiff's evidence—the laboratory report—was filed by Plaintiff and is in the record. The evidence has not been concealed or destroyed—it remains in the record. LabCorp is under no obligation to include every document in the record when it files something. Accordingly, the Court **DENIES** Plaintiff's Motion for Sanctions, (ECF No. 37).

On May 4, 2018, Plaintiff filed an Opposition brief in response to Defendant Vafadaran's Motion to Dismiss, (ECF No. 55), and alleged that "Defendant A. Vafadaran is a misbehaving litigant necessitating sanctions," (*id.* at 3). Plaintiff contends that Defendant Vafadaran did not serve Plaintiff a copy of the Motion to Dismiss, Plaintiff then called Defendant's counsel, Defendant's counsel then mailed a copy of the motion to dismiss, and Plaintiff received the motion. (*See id.* at 3, 7–13.) Plaintiff further contends that he only received portions of the motion and supporting memorandum of law. (*Id.* at 3.)

17-CV-916 JLS (WVG)

Based on Plaintiff's attached exhibit it is clear that he received both Defendant's motion and the supporting memorandum of law. (*See id.* at 7–13.) The first two pages are the motion; the second four are the supporting memorandum. It is also clear that Defendant Vafadaran's counsel originally attempted to serve the Motion on Plaintiff by the electronic EM/CMF system, (*see* ECF No. 49-2), where he asserts that "[a]ll Parties are registered ECF users," (*id.* at 2). Civil Local Rule 5.4.c requires that "Parties who are not Filing Users must be served with a copy of any pleading or other document filed electronically in accordance with the Federal Rules of Civil Procedure and these Local Rules." Plaintiff is representing himself, *pro se*, and is not a registered ECF user. Defendant Vafadaran **SHALL** comply with the Local Rules and Federal Rules of Civil Procedure when serving pleadings or documents on a non-ECF user. However, the Court declines to impose any sanctions on Defendant for the same reasons stated above with regard to Plaintiff's Motion for Sanctions against LabCorp's counsel.

## MOTION FOR DEFAULT JUDGMENT

Plaintiff filed a Motion for Default Judgment, (ECF No. 43), against Defendants Vafadaran, Cunningham, and Yang. Defendants Cunningham and Vafadaran filed Responses in Opposition to Plaintiff's Motion, (ECF Nos. 45, 50).

Federal Rule of Civil Procedure 55 permits a court to enter default judgment. A court is to grant or deny default judgment at its discretion. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (citing *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Rule 55 is a two-step process; the first step requires a plaintiff to seek a Clerk of Court's entry of default. *See Eitel*, 782 F.2d at 1471.

Here, it is clear that the Clerk of Court has not entered default against any Defendants. Moreover, Plaintiff's Motion for Default Judgment is predicated on the summons he personally mailed to Defendants on November 24, 2017. (ECF No. 43, at 2.) As previously discussed, the summons Plaintiff received on November 16, 2017 were issued in error; at the time, Plaintiff did not have permission to proceed *in forma pauperis*.

17-CV-916 JLS (WVG)

Moreover, a party, like Plaintiff, may not personally serve the summons and copy of complaint on Defendants. Fed. R. Civ. P. 4(c)(2). The Court understands that Plaintiff is not responsible for the erroneously issued summons and the Court will extend time for Plaintiff to properly serve any unserved Defendants. Thus, the Court **DENIES** Plaintiff's Motion for Default Judgment, (ECF No. 43).

**CONCLUSION**

In light of the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss, (ECF Nos. 16, 17, 40, 44, 49), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Second Amended Complaint, (ECF No. 13), except as to Plaintiff's claims against Defendant The United States of America, which the Court **DISMISSES WITH PREJUDICE**. The Court also **DENIES AS MOOT** LabCorp's Motion to Strike, (ECF No. 27), and **DENIES** Plaintiff's Motion for Sanctions and Motion for Default Judgment, (ECF Nos. 37, 43).

The Court previously expressed its concern that this case is a state law medical malpractice claim. (ECF No. 12, at 5.) Plaintiff has repeatedly amended his operative complaint attempting to allege sufficient facts to demonstrate how Defendants were acting under color of state law. The Court entertains serious doubts concerning Plaintiff's ability to cure the deficiencies in his Second Amended Complaint. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (stating that a district court may deny leave to amend due to a litigant's "repeated failure to cure deficiencies by amendments previously allowed"). However, because Plaintiff is proceeding *pro se* the Court will allow him to amend his complaint if he so chooses. While courts exercise broad discretion in deciding whether to allow amendment, they have generally adopted a liberal policy. *See United States ex rel. Ehmcke Sheet Metal Works v. Wausau Ins. Cos.*, 755 F. Supp. 906, 908 (E.D. Cal. 1991) (citing *Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.), *rev'd on other grounds*, 459 U.S. 810 (1982)).

Plaintiff **MAY FILE** an amended complaint, if any, <u>on or before thirty (30) days from the date on which this Order is electronically docketed</u>. As previously discussed, if Plaintiff files an amended complaint, the Court **GRANTS** Plaintiff an additional <u>thirty (30)</u>

23

days from the date on which he files a third amended complaint to serve any unserved defendants. *Failure to file an amended complaint within the time allotted may result in a dismissal of Plaintiff's case with prejudice.*

**IT IS SO ORDERED.**

Dated: June 6, 2018

Hon. Janis L. Sammartino
United States District Judge

17-CV-916 JLS (WVG)